UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KIMBERLY BOWIE, ) <br> ) <br> *Plaintiff* ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> *Acting Commissioner of Social Security,*[1] ) <br> ) <br> *Defendant* ) | No. 2:12-cv-205-DBH |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge did not sufficiently account for the impact of her mental impairments in determining her residual functional capacity ("RFC") and relied on flawed vocational expert testimony. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 10) at 4-12. I find no reversible error and, accordingly, recommend that the court affirm the decision.

This case returns to this court following a November 16, 2009, reversal of a December 11, 2008, adverse decision on the plaintiff's applications for SSD and SSI benefits and remand to

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 12, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

the commissioner for further proceedings. *See* Record at 7-18, 671-72. Following remand, the administrative law judge convened an August 25, 2010, hearing during which he admitted new evidence and heard the testimony of the plaintiff and a vocational expert. *See id*. at 628-30. At the conclusion of that hearing, he indicated that he was going to send the plaintiff to a psychological examining consultant. *See id*. at 651. On October 6, 2010, the plaintiff was evaluated by Disability Determination Services ("DDS") examining consultant James F. Whelan, Jr., Psy.D., who completed a report and a mental RFC assessment dated October 7, 2010. *See id*. at 1058-68.[3] On January 31, 2011, the administrative law judge convened a second post-remand hearing at which he admitted additional new evidence and heard the testimony of the plaintiff as well as psychological expert James Claiborn, Ph.D., and vocational expert Charles Galarraga. *See id*. at 571, 593-96.

On March 18, 2011, the administrative law judge issued the decision at issue, finding in relevant part, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, Finding 1, Record at 575; that she had severe impairments of major depression, anxiety disorder, borderline intellectual functioning, and substance abuse currently in remission, Finding 3, *id*.; that she retained the RFC to perform a full range of work at all exertional levels and was capable of performing simple, repetitive activities, interacting with coworkers and supervisors, interacting with a limited number of familiar individuals in the public, and tolerating occasional changes in a work setting, Finding 5, *id*. at 577; that, considering her age (39 years old, defined as a younger individual, on her alleged disability onset

---

[3] Dr. Whelan had previously examined the plaintiff on June 27, 2006, and completed a report dated June 28, 2006, based on that evaluation. *See* Record at 317-22.

date), education (general equivalency diploma), work experience (transferability of job skills immaterial), and RFC, the use of the Medical-Vocational Rules, Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), as a framework supported a finding that she was not disabled, whether or not she had transferable job skills, Findings 7-10, *id.* at 583-84; and that she, therefore, was not disabled from March 2, 2005, her alleged disability onset date, through March 18, 2011, the date of the decision, Finding 11, *id.* at 584. The Appeals Council declined to assume jurisdiction of the case after remand, *id.* at 566-68, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a)-(b), 416.1484(a)-(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

### A.  Mental RFC Finding

The plaintiff first argues that, for three reasons, the mental RFC determination of the administrative law judge is unsupported by substantial evidence: that he impermissibly (i) gave "great weight" to the 2006 and 2007 mental RFC determinations of two DDS nonexamining consultants, David R. Houston, Ph.D., and Thomas Knox, Ph.D., (ii) inadequately supported his rejection of the 2008 and 2010 mental RFC opinions of treating psychiatrist Robert McCarley, M.D., and the 2006 and 2010 reports and 2010 mental RFC opinion of Dr. Whelan, and (iii) accorded great weight to the testimony of Dr. Claiborn.  *See* Statement of Errors at 4-9.  I find no reversible error.

### 1.  Nonexamining Consultants' Written Opinions

Dr. Houston completed a mental RFC opinion dated August 17, 2006, in which he found the plaintiff capable, despite depression, anxiety, and low average intelligence, of understanding and remembering simple instructions, carrying out simple tasks, interacting with coworkers and supervisors, and adapting to simple changes.  *See* Record at 339.  Dr. Knox completed a mental RFC opinion dated September 22, 2007, in which he deemed the plaintiff capable, despite her documented anxiety, of understanding and remembering simple instructions as well as those of moderate complexity, carrying out simple tasks within a normal schedule, although she was moderately impaired in carrying out relatively complex tasks, interacting appropriately with coworkers and supervisors but not with the public, and adapting to minor changes in routine.  *See id*. at 535.

The administrative law judge recognized that the opinions of nonexamining consultants are not entitled to controlling weight but accorded the Houston and Knox opinions great weight on the basis that he found them well-supported and consistent with the record as a whole. *See id*. at 583. The plaintiff contends that this reliance was misplaced because the administrative law judge did not resolve inconsistencies between the two opinions, which, in any event, were based on a materially incomplete record, in that neither consultant had the benefit of review of later submitted evidence that included treatment records and functional assessments by treating and examining sources. *See* Statement of Errors at 4-5.

With respect to the first point, the plaintiff elsewhere acknowledges that an administrative law judge may pick and choose among expert opinions. *See id*. at 9; *see also, e.g., Evangelista v. Secretary of Health & Human Servs*., 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks – the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter."). She nonetheless suggests that the administrative law judge failed to "clarify[y] how [he] derived the specific components of [his] RFC from these sources[,]" *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527, at *4 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010), by neglecting to resolve inconsistencies between the Houston and Knox opinions, *see* Statement of Errors at 4-5, 9. She points out that, whereas Dr. Houston found that she could understand and remember only simple instructions, Dr. Knox determined that she could understand and remember both simple and moderately complex instructions, and whereas Dr. Houston noted no limitation on her ability to interact with the general public, Dr. Knox indicated that she was precluded in interacting with the public. *See id*. at 4.

In *Staples*, the administrative law judge could not be discerned to have relied in part or in whole on any expert mental RFC opinions of record. *See Staples*, 2010 WL 2680527, at *3-*4. In this case, by contrast, it is clear what occurred. The administrative law judge implicitly resolved the conflict regarding the extent of the plaintiff's ability to understand and remember instructions by finding her capable of performing simple, repetitive activities, a finding supported by the opinions of both Drs. Knox and Houston as well as that of a third nonexamining consultant, Dr. Claiborn. *Compare* Finding 5, Record at 577 *with id*. at 339, 535, 612-13. He also implicitly resolved the clash regarding the extent of her ability to tolerate interaction with the public by adopting Dr. Claiborn's opinion that she could interact with a limited number of familiar individuals in the public. *Compare* Finding 5, *id*. at 577 *with id*. at 339, 535, 613.

Accordingly, there was no fatal failure to explain the resolution of inconsistencies between the Houston and Knox opinions.

With respect to the second point, the plaintiff correctly notes that an RFC opinion of a nonexamining consultant rendered in the absence of review of material, later submitted evidence cannot constitute substantial evidence of a claimant's RFC. *See* Statement of Errors at 5; *see also, e.g., Maddocks v. Astrue*, No. 1:11-cv-461-NT, 2012 WL 5255197, at *6 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("[A] a state-agency reviewer's report cannot stand alone as substantial evidence in support of an administrative law judge's opinion when material new evidence has been submitted subsequent to its issuance, calling the expert's conclusions into question[.]") (citation and internal punctuation omitted). However, at oral argument, counsel for the commissioner suggested that it was unnecessary to evaluate whether the Houston and Knox opinions, standing alone, constitute substantial evidence of the plaintiff's RFC. She reasoned that, because the Houston and Knox opinions are supported by the record evidence then available

to them – a proposition that the plaintiff does not contest – and are largely consistent with the testimony of Dr. Claiborn, who did evaluate the totality of the record evidence, the opinions of Drs. Houston, Knox, and Claiborn collectively provide substantial evidence of the plaintiff's RFC. I agree.

The plaintiff, hence, falls short of making a persuasive case for reversal and remand on this basis.

### 2. Opinions of Treating Physician, Examining Consultant

The record contains two mental RFC opinions of Dr. McCarley, who commenced treating the plaintiff on August 22, 2007, *see* Record at 428-32, and was continuing to treat her as of her hearing date of January 31, 2011, *see id*. at 613-14. Dr. McCarley submitted a mental RFC form dated September 22, 2008, in which he indicated that the plaintiff was markedly limited in, or effectively precluded from performing, 10 of 20 work-related mental capacities, including the abilities to (i) maintain attention and concentration sufficient to perform work tasks throughout an eight-hour day, (ii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (iii) work in coordination with or proximity to others without being distracted by them, (iv) complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, (v) interact appropriately with the public, and (vi) accept instructions and respond appropriately to criticism from supervisors. *See id*. at 537-38. He explained:

> The [plaintiff] has struggled with depression symptoms interfering [with] her concentration, motivation, energy, irritability, sleep has been problematic (not able to[,] resulting in impaired functioning). She also has Post-Traumatic Stress Disorder which causes [increased] anxiety [and] panic, hypervigilance, and makes the [plaintiff] prone to anger outbursts, risk of inappropriate behavior, [and]

>attendance issues secondary to misreading perceived threats and impaired ability to interact with others.

*Id*. at 538.

Dr. McCarley also submitted a mental RFC form dated June 16, 2010, in which he deemed the plaintiff markedly limited in, or effectively precluded from performing, eight of 20 work-related mental capacities, including all of those mentioned above, save for the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *See id*. at 1055-56. He explained:

> [The plaintiff] has struggled with depression [and] anxiety symptoms (likely PTSD) [with symptoms] of depressed mood, poor concentration, motivation, energy, irritability, sleep, hypervigilance, anxiety, panic, anger outbursts. She continues to struggle [with] misreading environmental cues resulting in impaired ability to interact [with] others.

*Id*. at 1056.

The record also contains a July 16, 2010, letter from Dr. McCarley stating that the plaintiff's "inability to work [is] a result of her mood problems, interpersonal difficulties, and her mood lability and resultant irritability [secondary] to her PTSD, depression, and anxiety." *Id*. at 1057. He added:

> [The plaintiff] has isolated herself from friends and family of recent and has been sober the entire time. She has been irritable, depressed, and had problems following through with appointments. These are the characteristics of her mood disorder, and it is these which make working problematic for the [plaintiff] at this time.

*Id*.

The administrative law judge explained his handling of these opinions as follows:

> Although Dr. McCarley is the [plaintiff's] treating psychiatrist, little weight has been given to his opinions as the degree of limitations cited is not supported in the contemporaneous treatment records, and because they are inconsistent with the evidence as a whole, including treatment notes indicating improvement, the

> [plaintiff's] functional activities of daily living, including work activity, and the testimony of the impartial medical expert at hearing. They are also inconsistent with other statements by Dr. McCarley. For instance, although he wrote a letter in support of food stamps on February 19, 2009, he made it clear to the [plaintiff] on that date that looking for work was important and that trying to [do] this [] was an important part of her treatment. Dr. McCarley also noted on April 8, 2009, that the [plaintiff] clearly does better when she is working, when she is making money, and when she has something to do and her self-esteem issues [are] not so prominent. He also indicated on November 24, 2009, that he believed that returning to work would be wonderful for her, and encouraged that she try to work and take some control in her life on April 23, 2010.

*Id*. at 582 (citations omitted).

On the basis of an interview and WAIS-III testing given on June 27, 2006, *see id*. at 317, Dr. Whelan in his June 28, 2006, report found that, as a result of the plaintiff's affective disorder and anxiety, she "present[ed] with serious psychological limitation in terms of her ability to do work-related activity[,]" *id*. at 322. He stated:

> She does have the cognitive ability to be able to understand work that is at least simple and repetitive in nature. However, anxiety and/or affective disorder may reduce her availability to take in information which she could otherwise understand. She displayed adequate long and short-term memory and immediate recall during the course of the examination. She speaks of weakness in concentration. Affective disorder and/or anxiety may contribute to that. She sees few skills at persistence. Affective disorder may reduce her willingness to persist and the demand to persist may increase her level of anxiety. Affective disorder and/or anxiety may reduce her availability to take in information to help her to persist. She describes very limited social interaction. The demand to interact with others may increase her level of anxiety and she may be predisposed to misinterpret words or actions of others and get into a fight or flight pattern of behavior characterized by her becoming very angry. She speaks of preferring to do things her own way when asked about her ability to adapt to change. Affective disorder may reduce her willingness to attempt to adapt, her anxiety level may be increased at the demand to adapt and affective disorder and/or anxiety may reduce her availability to take in information to help her to adapt.

*Id*. at 322. In 2010, based on an interview and WAIS-IV testing conducted on October 6, 2010, and a review of certain records, *see id*. at 1058, Dr. Whelan made similar findings, *see id*. at 1064. He still found the plaintiff capable cognitively of doing simple, repetitive work, although

9

he stated that anxiety, affective disorder, and perhaps even personality traits might reduce her availability to take in information that she might otherwise understand. *See id*.

Dr. Whelan also completed a mental RFC form dated October 7, 2010, in which he assessed the plaintiff as markedly impaired, *inter alia*, in her abilities to relate to coworkers, deal with the public, behave in an emotionally stable manner, and relate predictably in social situations. *See id*. at 1066-67. He found her moderately impaired in her abilities to follow work rules, use judgment, interact with supervisors, and function independently, and slightly to moderately impaired in her ability to understand, remember, and carry out simple job instructions. *See id*.

The administrative law judge stated that he gave "[s]ome limited weight" to these opinions "as Dr. Whelan only examined the [plaintiff] on two occasions, and his opinions are not well supported and appear to be based at least in part on the [plaintiff's] subjective allegations." *Id*. at 583.

The plaintiff argues that the administrative law judge, "without reasonable justification, failed to account for these limitations in his RFC finding." Statement of Errors at 6. She points out that both Drs. Whelan and McCarley had the opportunity to form judgments as to the plaintiff's RFC longitudinally over an extended period of time, each made consistent determinations, and the opinions of each were consistent with the opinions of the other, with both finding significant impairments in persistence and pace and marked impairment in the plaintiff's ability to relate to coworkers. *See id*. at 5-7.

At oral argument, the plaintiff's counsel emphasized that the administrative law judge had given short shrift to Dr. McCarley's opinions by (i) ignoring the length and intensity of the treatment relationship, as reflected in the Dr. McCarley's exceptionally detailed notes of nearly

10

80 visits over 40 months, and (ii) cherry-picking a few notes in which Dr. McCarley suggested that working would be good for the plaintiff while ignoring notes in 2009 and 2010 indicating that the plaintiff's few hours of work per week as a bartender were extremely taxing for her and that, at various points, her depression was sufficiently severe as to warrant increases in her medication dosages and/or a recommendation of full or partial psychiatric hospitalization. He added that the administrative law judge placed undue emphasis on non-medical evidence of record such as the plaintiff's activities of daily living, which he argued reveal nothing useful about her ability to sustain full-time employment.

Nonetheless, as counsel for the commissioner rejoined, the administrative law judge considered the record as a cohesive whole, supplying good reasons for declining to give controlling weight to the McCarley opinions and giving little weight to both the McCarley and Whelan opinions.

The commissioner's regulations promise that controlling weight will be given to the opinion of a treating source "[i]f [the commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

However, controlling weight can never be given to opinions on issues reserved to the commissioner, such as whether a claimant is disabled or is capable of working only part-time. *See id*. §§ 404.1527(d), 416.927(d); *Hallock v. Astrue*, No. 2:10-cv-374-DBH, 2011 WL 4458978, at *6 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Oct. 12, 2011). Nonetheless, even with respect to issues reserved to the commissioner, an administrative law judge must supply "good

reasons" for discounting the opinion of a treating source. *See, e.g.,* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

"A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons." *Elmore v. Astrue*, No. 2:11-cv-394-DBH, 2012 WL 2913702, at *5 (D. Me. June 27, 2012) (rec. dec., *aff'd* July 17, 2012) (citation and internal quotation marks omitted). That Dr. Whelan examined the plaintiff once in 2006 and once in 2010 does not transform him into a "treating source." *See, e.g.*, 20 C.F.R. §§ 404.1502, 416.902 (defining a "treating source" as "[a claimant's] own physician, psychologist, or other acceptable medical source who provides [him or her], or has provided [him or her], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].").

The administrative law judge permissibly considered whether the plaintiff's activities of daily living were consistent with the degree of impairment that she claimed and that Drs. McCarley and Whelan assessed. *See, e.g.*, 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors relevant to the evaluation of a medical opinion include its consistency with the record as a

12

whole). He found that the physical and emotional demands of the plaintiff's activities of daily living contradicted the nature and degree of impairment alleged; for example, she watched television and movies without apparent difficulties concentrating, listened to the radio, played cards, had friends, visited with family members quite a bit, went to bingo with her mother and sister, went out to dinner, traveled to Florida with her parents and husband in February 2009, traveled to attend her son's basic training graduation in 2009, worked part-time as a bartender for significant periods of time after her alleged onset date of disability, participated in December 2009 in a Christmas party at the club where she worked, and stated in November 2010 that she planned to go to the club to help prepare a Thanksgiving meal for a number of people. *See* Record at 580-81.

He also reasonably deemed Dr. McCarley's notations in February 2009, April 2009, November 2009, and April 2010, that the plaintiff should look for work and/or would benefit or had benefited from working, *see id*. at 582, inconsistent with his September 2008 and June 2010 assessments that she suffered from a number of marked limitations in work-related capacities. As counsel for the commissioner observed, there is an inherent inconsistency between assessing such a degree of limitation and recommending that an individual seek work, just as there would be an inherent inconsistency in recommending that a person with a compromised knee go running. In addition, while it is true that, on at least two occasions, Dr. McCarley recommended full or partial psychiatric hospitalization to the plaintiff, she did not seek the recommended treatment. *See id*. at 1019-20 (note of October 22, 2008 recommending full or partial hospitalization), 1017 (note of October 29, 2008, reflecting that plaintiff felt better and declined full or partial hospitalization or any other higher level of care, which Dr. McCarley felt made

sense at that time), 1088 (note of July 16, 2010, indicating that Dr. McCarley had offered both inpatient and partial hospitalization but that the plaintiff was not interested).

The plaintiff does not challenge the three reasons given by the administrative law judge for according limited weight to the Whelan mental RFC opinion: that (i) Dr. Whelan had only seen her twice, (ii) his opinion was not well-supported, and (iii) he appeared to base it at least in part on her subjective allegations. *See id.* at 582-83; Statement of Errors at 4-9. Beyond this, as counsel for the commissioner pointed out, the administrative law judge elsewhere noted that, although Dr. Whelan based his 2006 findings on the plaintiff's self-report of sobriety, the evidence indicated that this report was inaccurate. *See* Record at 581. This further called into question Dr. Whelan's conclusions.

There was no error in the administrative law judge's handling of the McCarley or Whelan RFC opinions.

### 3. Opinion of Nonexamining, Testifying Consultant

At the plaintiff's January 31, 2011, hearing, Dr. Claiborn testified that she had medically determinable impairments of affective disorder, probably best described as major depression, anxiety disorder not otherwise specified, and substance abuse, but that she retained the capacity to perform simple, repetitive tasks, adequately interact with supervisors and coworkers, interact with the public to the extent that they were a limited number of people with whom she was somewhat familiar, and tolerate occasional changes in the work setting. *See id.* at 611-13. He affirmed, on cross-examination, that he was familiar with the opinions of Drs. McCarley and Whelan but disagreed with them. *See id.* at 613-19.

The administrative law judge gave "the greatest weight" to Dr. Claiborn's testimony, "as it is well reasoned and supported by the record as a whole." *Id.* at 580. The plaintiff contends

14

that he erred in so doing in that (i) Dr. Claiborn failed to consider her borderline intellectual functioning, tainting his testimony, and (ii) his testimony in any event was not well-reasoned but, rather, conclusory and unexplained. *See* Statement of Errors at 7-9.

Dr. Claiborn did not fail to consider the plaintiff's borderline intellectual functioning. He testified that he was aware of Dr. Whelan's 2006 and 2010 WAIS test findings, *see* Record at 614-17, and he deemed the plaintiff *cognitively capable* of performing simple, repetitive tasks, *see id*. at 612-13, as had Dr. Whelan, *see id*. at 322, 1064. The plaintiff is correct that Dr. Claiborn provided no explanation for his RFC opinion. *See id*. at 612-13. In terming it "well reasoned," the administrative law judge erred. Nonetheless, the error is harmless. The administrative law judge provided a second reason for according great weight to the Claiborn opinion – that it was supported by the record as a whole. *See id*. at 580. This finding, in turn, was supported by substantial evidence. As discussed above, he had parsed the record in great detail, noting, for example, the extent of the plaintiff's activities of daily living, including her part-time bartending work, and Dr. McCarley's repeated advice that she seek work apart from the bartending work. *See id*. at 580-81. There is, therefore, no basis on which to disturb his decision to resolve conflicts in the expert opinions of record in favor of according the Claiborn opinion great weight.[4]

---

[4] The plaintiff cites *Ormon v. Astrue*, No. 11-2107, 2012 WL 3871560 (1st Cir. Sept. 7, 2012), for the proposition that the administrative law judge's reliance on Dr. Claiborn's unsupported RFC opinion alone constitutes serious error. *See* Statement of Errors at 9. In *Ormon,* the First Circuit held that an administrative law judge improperly relied on the opinion of a nonexamining physician who supplied four reasons for his RFC assessment, one of which was conclusory and three of which did not survive scrutiny. *See Ormon*, 2012 WL 3871560, at *3. The court observed that, "under the regulations, the weight given to a nonexamining opinion 'will depend on the degree to which [it] provide[s] supporting explanations.'" *Ormon*, 2012 WL 3871560, at *3 (quoting 20 C.F.R. § 404.1527(d)(3)) (since renumbered 20 C.F.R. § 404.1527(c)(3)). *Ormon* is distinguishable. First, *Ormon* concerned the RFC report of a nonexamining, *non-testifying* physician. *See id*. The First Circuit has recognized that, while such reports can stand as substantial evidence of a claimant's RFC, *see, e.g., id*., they "lack[] the assurance of reliability that comes on the one hand from first-hand observation and professional examination or, on the other, from first-hand testimony subject to claimant's cross-examination[,]" *Browne v. Richardson*, 468 F.2d 1003, 1006 (1st Cir. 1972). Second, while the lack of a valid supporting explanation was dispositive in *Ormon*, it is (*continued on next page*)

### B. Vocational Evidence

The plaintiff finally argues that the administrative law judge's reliance at Step 5 on the testimony of vocational expert Galarraga was misplaced in that he (i) transmitted a hypothetical question to Galarraga that did not accurately reflect her mental RFC and (ii) failed to resolve a conflict between Galarraga's testimony and information in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"), in contravention of Social Security Ruling 00-4p ("SSR 00-4p"). *See* Statement of Errors at 10-12.

The first point is contingent on the success of the plaintiff's contention that the administrative law judge erred in determining her mental RFC. *See id.* at 10. I have recommended that the court reject that argument. If the court agrees, that is dispositive.

The second point is unpersuasive. SSR 00-4p provides, in relevant part:

The Responsibility To Ask About Conflicts

When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

- Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

- If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

---

not the only factor relevant to the evaluation of an opinion of a nonexamining agency consultant. *See* 20 C.F.R. §§ 404.1527(c)(3) & (e)(2)(ii), 416.927(c)(3) & (e)(2)(ii) (relevant factors include the degree to which the consultant "consider[ed] all of the pertinent evidence in [a claimant's] claim, including opinions of treating and other examining sources[,]" as well as "the consultant's medical specialty and expertise in [the commissioner's] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions"). In this case, Dr. Claiborn had the benefit of review of the full record. As discussed above, the administrative law judge supportably considered his RFC assessment consistent with the record evidence, including the plaintiff's range of activities of daily living, among them part-time bartending work, Dr. McCarley's recommendations that she work, and the opinions of Drs. Houston and Knox.

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012), at 246.

The administrative law judge asked Galarraga whether limitations corresponding to those in his final RFC determination would significantly erode the unskilled work base. *See* Record at 620. Galarraga testified that they would not. *See id.* at 621. The plaintiff's counsel inquired whether Galarraga could supply any statistics regarding the percentage of erosion of the unskilled base. *See id.* at 625. He said that he could not, although "[t]here would be positions such as, like, vehicle cleaners." *Id.*

In his decision, the administrative law judge found this testimony consistent with information in the DOT. *See id.* at 584. He further noted that, in *Garcia-Martinez v. Barnhart*, 111 Fed. Appx. 22 (1st Cir. 2004), the First Circuit had held that an RFC with no exertional limitations and with limitations of routine, repetitive work that did not involve undue pressure or interactions with the public did not preclude the use of the Grid as a framework. *See id.*

The plaintiff contends that the testimony did not accord with the DOT in that (i) her IQ of 74 places her at the 4.2 percentile, and the DOT descriptions of the jobs of automobile detailer, DOT § 915.687-034, and car-wash attendant, automatic, DOT § 915.667-010, the two closest listings in the DOT to a "vehicle cleaner," require a general learning ability, verbal aptitude, and numerical aptitude in the lowest one-third of the population excluding the bottom 10 percent. *See* Statement of Errors at 12; DOT §§ 915.687-034, 915.667-010. She posits that the

17

administrative law judge's failure to identify and resolve this discrepancy constitutes reversible error. *See* Statement of Errors at 12.

This argument misses the mark. The administrative law judge found, and conveyed to the vocational expert, that the plaintiff was capable, *inter alia*, of performing simple, repetitive activities. *See* Finding 5, Record at 577; *id.* at 620. As discussed above, that finding is supported by substantial evidence. There is no apparent discrepancy between Galarraga's testimony regarding the limitations conveyed by the administrative law judge and the information in the DOT.

In any event, as the administrative law judge observed, in *Garcia-Martinez* the First Circuit held as a matter of law that limitations nearly identical to those at issue here did not significantly interfere with the performance of the full range of unskilled work. *See Garcia-Martinez*, 111 Fed. Appx. at 23 (commissioner did not err in relying on the Grid when claimant's nonexertional impairments – a limitation to the performance of work of a routine, repetitive nature that did not involve undue pressure and a preclusion from interacting with the public – did not significantly interfere with the performance of a full range of unskilled work).

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 31st day of March, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge